FILED'06 JUL 25 17:06USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. CR 04-30058-PA |
| v. | ) | |
| | ) | **OPINION** |
| JAVIER CONCHAS-ESCALANTE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PANNER, District Judge:**

This opinion further explains my oral ruling that the facts of this case do not support imposing a two-level sentence enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with the offense.

The weapon at issue is a .45 caliber semi-automatic handgun found in the home where Defendant resided, though not in his room. Defendant concedes it is his gun. Defendant says he acquired and used the gun exclusively for target practice, as did other members of his family. The government offers no evidence to refute this.

The government concedes it has no evidence the weapon was ever present at any drug sale. All drug transactions took place at other locations. No drugs were found in Defendant's home.

/ / / /

1 - OPINION

Nevertheless, the government contends the court must impose the two-level enhancement.  In the government's view, it need show nothing more than that the Defendant happened to possess a gun during the time period the offense was committed, without regard to whether there was any connection between the possession of the firearm and the commission of the offense.  At that point, the government argues, the burden shifts to the Defendant "to prove that is *clearly improbable* that he possessed the weapon in connection with the offense."  Government's Sentencing Memorandum at 2 (emphasis in original).  The government reiterated this view during the sentencing hearing.

The government's argument overstates the law.  Sentencing Guideline § 2D1.1(b)(1) states:

> **(b) Specific Offense Characteristics**
>
> (1) If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

Note 3 to the Guidelines commentary then explains that:

> The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

In essence, the authors of this Guideline concluded that if the weapon was present when the offense was committed, it is reasonable to infer that the weapon was connected to the offense, unless the Defendant clearly demonstrates otherwise.  That is really in the nature of a rebuttable evidentiary presumption.
/ / / /

To obtain the benefit of the "clearly improbable" standard,

2 - OPINION

the government must show the weapon was present when the offense
was committed.  The government has not done so.[1]

The government relies upon the following statement in <u>United
States v. Nelson</u>, 222 F.3d 545, 549 (9th Cir. 2000):

> In this circuit, once the government demonstrates
> that a defendant possessed a dangerous weapon, to
> avoid a sentence enhancement under § 2D1.1(b)(1),
> the burden of proof is on the defendant to prove
> that it is "clearly improbable" that he possessed
> a weapon in connection with the offense.

In <u>Nelson</u>, five guns were found in various locations in the
house, along with a large marijuana grow operation.  In addition,
"[l]oose marijuana, sales records, and drug paraphernalia were
found throughout the house."  <u>Id.</u> at 547.  Since the weapons were
present when the offense was committed, the government had met
its burden, and the panel correctly applied the "clearly
improbable" standard.  The panel even cited the "if the weapon
was present" qualification, <u>id.</u> at 549, though omitting it from
the quotation set out above, presumably because it was not a
seriously contested issue.  <u>Nelson</u> does not alter the established
rule that the "clearly improbable" standard applies only if the
government first proves "the weapon was present."

The government also errs by asserting that no connection
must be shown between the weapon and the offense.  Admittedly, in
<u>United States v. Restrepo</u>, 884 F.2d 1294 (9th Cir. 1989), a panel

---

[1] The government does argue that a "drug detection dog
alerted" in several areas of the house, though no drugs were
found there.  That is not surprising.  Defendant admitted making
nine drug sales.  During those events, drugs undoubtedly came in
contact with his hands, clothing, and perhaps other belongings
that were with him.  By itself, this is insufficient to show that
drugs were stored or sold in his home.

of this Circuit did say that "in applying § 2D1.1(b)(1), the
court need not find a *connection* between the firearm and the
offense." Id. at 1296 (emphasis in original).

That can't be correct. By definition, this enhancement is
for "Specific Offense Characteristics." U.S.S.G. § 2D1.1(b). If
the gun has no relationship to the offense, the mere fact that
the defendant happens to own a gun is not a specific offense
characteristic. Rather, it is a characteristic of the
"offender."

As a general rule, Americans may legally own firearms such
as the one Defendant possessed.[2] A sentencing guideline that
requires the court to automatically punish gun owners more
severely than individuals who commit the same crime, but do not
own guns--without any showing of a connection between the offense
and the gun--would raise serious constitutional concerns. I am
not suggesting that the gun must have actively been used in
committing the offense. It may be sufficient, for example, that
the gun was kept at the place where the crime transpired so it
would be available if needed to defend the drugs. However, there
must be some nexus between the offense and the weapon.

Furthermore, note 3 to the Guidelines commentary instructs
that this "adjustment should be applied if the weapon was
present, unless it is clearly improbable **that the weapon was
connected with the offense**." (Emphasis added). The "clearly

---

[2] As an illegal alien, Defendant could not lawfully possess
a firearm. Nevertheless, this sentencing enhancement applies to
all defendants, not just to illegal aliens. Consequently,
whether this Defendant was authorized to possess a firearm is not
a factor in construing this Guideline.

4 - OPINION

improbable" standard would be nonsensical if, as the government suggests, there is no requirement in the first place that the gun have any connection to the offense.

In Restrepo, the firearm was present at the scene of the crime.  The drug sale took place at Restrepo's home.  Additional drugs and drug processing and distribution equipment were found there, along with a large amount of currency and a loaded "automatic pistol."  Restrepo, 884 F.2d at 1295.  Consequently, the "weapon was present" for purposes of Note 3 of the Guidelines commentary.  The panel had no reason to consider, let alone to decide, whether this sentencing enhancement applied in a case where there was no nexus between the weapon and the offense, as those were not the facts in Restrepo.

Also informative is the following passage from Restrepo:

> The judge reasonably inferred from the evidence that Restrepo possessed the weapon during the commission of the offense.  Several of the offenses charged took place at his residence. Agents found the loaded automatic pistol hidden between the mattress and the box spring of his bed, in the same room as equipment used for drug distribution.  They also found drugs in several places in his home.

Id. at 1296.

This discussion would be unnecessary if the Restrepo panel had concluded that no nexus must be shown between the weapon and the offense--that it is enough that the defendant happened to own or possess a weapon during the same time period in which he committed the offense.  "[D]uring the commission of the offense" means more than just "the same time period as the offense."

I am satisfied that Restrepo intended to reject only the
contention that the gun must actively be employed in the
commission of the offense, and does not eliminate the requirement
that there be a nexus between the gun and the offense.

The government also relies upon United States v. Stewart,
926 F.2d 899 (9th Cir. 1991), for the proposition that the weapon
need not be present at the site of the particular overt act of
distribution.  A critical fact in Stewart was that the defendant
was charged with conspiracy to manufacture, possess and
distribute methamphetamine.  Id. at 901-02.  The location and
duration of the offense thus went well beyond the lone overt act
of distribution.  Id.  Defendant Conchas-Escalante is not charged
with conspiracy.  Stewart also emphasized that the weapon
possessed was "a Cobry M-11 9mm. machine gun . . . ." Id. at
902.  There was no suggestion that Stewart possessed the machine
gun for any legitimate purpose.  By contrast, the gun possessed
by Defendant Conchas-Escalante is suitable for target shooting
and as a self-defense weapon that might legitimately be kept in a
home.

Finally, in the cases relied upon by the government, the
Circuit was asked to decide whether the district court abused its
discretion by imposing the gun enhancement.  The Circuit did not
hold that it was an abuse of discretion not to impose a gun
enhancement under those facts.

/ / / /

/ / / /

/ / / /

/ / / /

6 - OPINION

## Conclusion

The facts of this case do not support imposition of the two-level sentence enhancement under U.S.S.G. § 2D1.1(b)(1).

IT IS SO ORDERED.

DATED this __25__ day of July, 2006.

Owen M. Panner
United States District Judge

7 - OPINION